ANTHONY VANILLA, Plaintiff, *v.* FREDERICK A. MORAN et al., as Members of the Board of Parole of the State of New York, et al., Defendants.

Supreme Court, Special Term, Albany County, January 31, 1947.

*Nathaniel L. Goldstein, Attorney-General (Wendell P. Brown* and *Charles F. Steele* of counsel), for defendants.

*E. Stewart Jones* and *Abraham J. Gellinoff* for plaintiff.

BOOKSTEIN, J. Plaintiff has instituted this action against Thomas E. Dewey, as Governor of the State of New York, and defendants Moran, Costuma and Taylor, as members of the Board of Parole of the State of New York, for judgment declaring, among other things, that there is no obligation on the plaintiff, and that he shall not be required to continue to subject himself to the jurisdiction of the Board of Parole.

The defendant, Thomas E. Dewey, appears specially and moves for an order pursuant to rule 106 of the Rules of Civil Practice, dismissing the complaint as to him on the ground that it appears on the face thereof that this court has not jurisdiction of the person of said defendant, Thomas E. Dewey, as Chief Executive of the State of New York, in the performance of his official duties; and upon the further ground that this court has not jurisdiction of the subject matter of this action.

The defendants Moran, Costuma and Taylor have answered and now move for judgment on the pleadings, pursuant to rule 112 of the Rules of Civil Practice, dismissing the complaint, as to them, on the ground that this court does not have jurisdiction of the subject matter of the action and on the ground that the complaint does not state facts sufficient to constitute a cause of action; the plaintiff asks for judgment on the pleadings in his favor.

The facts, briefly, are as follows: On March 17, 1924, plaintiff was convicted in the County Court of Kings County, as a second offender, of the crime of robbery in the first degree committed on November 30, 1920.

Upon such conviction, he was sentenced, pursuant to law, to a definite term, or " straight sentence " of forty years, which term would expire on January 26, 1964.

On July 1, 1940, the Prison Board at Sing Sing Prison, constituting the board provided by the Correction Law for that purpose, submitted to the then Governor, Herbert H. Lehman,

a report recommending that plaintiff be allowed as " Reduction Earned " a " Commutation " of seventeen years, eleven months, and nine days, and " Compensation " of five years, six months and ten days, or a total of twenty-three years, five months and nineteen days, in accordance with the provisions of the Correction Law.

Former Governor Lehman's warrant, dated July 25, 1940, recites, among other things, as a condition of plaintiff's release from prison, that he " be subject to the jurisdiction and control of the board of parole as provided in article eight of the correction law."

On July 26, 1940, plaintiff was requested by an officer of Sing Sing Prison to sign, and he did sign an instrument purporting to accept the jurisdiction of the Board of Parole and thereafter was released from prison on parole on August 7, 1940.

Plaintiff contends that, in accordance with the provisions of sections 242 and 243 of the Prison Law, as the same existed on the date of the commission of the crime, he was entitled to be discharged from prison and not merely released, subject to one condition only, to wit, that he thereafter be not convicted of a felony on pain of the further imprisonment provided for in said section 243; and that there is no obligation on plaintiff to continue to subject himself to the jurisdiction of the Board of Parole.

The defendants, constituting the Board of Parole, contend that plaintiff must continue to subject himself to the jurisdiction of the Board of Parole; to abide by their rules and regulations and to comply with the instrument which he signed prior to his release and that, if he fails so to do, he is liable to a revocation of his parole and further imprisonment, even though he be not convicted of a felony committed after his aforesaid release from imprisonment.

The controversy arises by reason of changes in the Prison and Correction Laws, made after the date of the commission of the crime, plaintiff's contention being that the law as it existed at the date of commission of the crime controls, whereas the defendants, constituting the Board of Parole, contend that the law as it existed at the date of plaintiff's release controls.

The answering defendants further contend that even if the statutory law on the subject, as it existed on the date of release, does not control, the provisions of section 4 of article IV of the State Constitution control and defeat plaintiff's claim. They also contend that an action for a declaratory judgment cannot be maintained against the State.

The act complained of was that of his predecessor and not that of the defendant, Governor Dewey, and he is made a party merely as the successor in office.

The act of former Governor Lehman, complained of, was done in his official capacity in the performance of his executive powers. In the performance of such an act, the Governor of the State "is immune from interference by judicial process and free from judicial control." (See *Matter of Donnelly* v. *Roosevelt* [*In re Walker*], 144 Misc. 525, 532, and cases there cited. See, also, *People ex rel. Smith* v. *Hoffman,* 166 N. Y. 462, 476.)

The power of the Governor to grant reprieves, pardons and commutations is an executive power and function. (*People ex rel. Forsyth* v. *Court of Sessions,* 141 N. Y. 288, 294; *People ex rel. Spillman* v. *Wilson,* 236 App. Div. 201, 203; *People* v. *Warder,* 120 Misc. 94, 99.)

It necessarily follows that this court has no jurisdiction of the person of the Governor, nor, so far as he is concerned, of the subject matter of this action and that the motion of the defendant, Governor Thomas E. Dewey, must be granted and the complaint, as to him, must be dismissed.

We come now to a consideration of the action against the answering defendants and it seems logical first to dispose of the question of whether or not an action for a declaratory judgment may be maintained, since, if that question is determined in the negative, it would be unnecessary to consider and determine the question of whether or not plaintiff's basic contention of freedom from the conditions of parole complained of is tenable.

The gravamen of the complaint in this action clearly demonstrates that this is an action against the State. "In such a suit, whether it be instituted against the State or its officers or against both officers and State, the State is the real party in interest and the consent of the State to be sued is required." (*Niagara Falls Power Co.* v. *White,* 292 N. Y. 472, 479.)

Even though the doctrine of requiring the consent of the State to be sued is quite rigid, the Court of Appeals, in the case of *Niagara Falls Power Co.* v. *White* (*supra,* p. 479), said: "We do not, of course, mean that no suit for a declaratory judgment may ever be maintained against a State officer or agency."

In connection with the statement, the Court of Appeals cited the case of *New York Operators* v. *State Liquor Authority* (285 N. Y. 272).

In *New York Operators* v. *State Liquor Authority* (*supra*) the Court of Appeals held an action for a declaratory judgment to be proper. In that case, the action in effect was against the State, although the State was not named as a party, but one of its agencies was. In that case the court held that the exercise of the power " to declare rights and other legal relations on request " vested by section 473 of the Civil Practice Act in the Supreme Court may not be properly refused when only questions of law are involved, the determination of which will serve some practical end in quieting or stabilizing an uncertain or disputed jural relationship, and other forms of action are not reasonably adequate and it held further that the plaintiff's right to defend an action or a criminal prosecution against it does not constitute such another adequate remedy as to warrant a denial of declaratory relief. The court was divided four to three.

Indeed, the Court of Appeals in *Niagara Falls Power Co.* v. *White* (*supra,* p. 479) said: " We do not stop to inquire whether an otherwise permissible suit for a declaratory judgment may not, under some circumstances, be maintained against the State itself." In connection with that statement, it referred to *Burnham* v. *Bennett* (259 N. Y. 655) and *Hydraulic Race Co.* v. *Greene* (257 N. Y. 540) which in effect, if not in form, were actions against the State, and in which judgments, declaratory in their nature, were permitted.

In *Town of Ohio* v. *People* (264 App. Div. 220) the Appellate Division, Fourth Department, at page 222, held that the immunity of the State to a suit did not extend to actions for declaratory judgments and stated that the Legislature in the enactment of section 473 of the Civil Practice Act " * * * placed no limitations upon the use of declaratory judgment."

However, the Court of Appeals in *Niagara Falls Power Co.* v. *White* (292 N. Y. 472, 479, *supra*) said: " We do not pass on the correctness of the reasoning or the result in *Town of Ohio* v. *People* (264 App. Div. 220).''

On the basis of the decisions thus referred to and discussed, it would seem, that, if the only question involved here is one of law and that plaintiff has no other adequate remedy at law, and the determination of the question will serve some practical end in quieting or stabilizing an uncertain or disputed jural relationship, this court has no alternative, but to hold that plaintiff's action for a declaratory judgment does lie.

There is only a question of law involved here. It can hardly be doubted that the determination of the question raised by

plaintiff will serve some practical end in quieting or stabilizing an uncertain or disputed jural relationship.

There remains then only the element of whether or not plaintiff has some other adequate remedy at law.

It is difficult to conceive any adequate legal remedy which plaintiff has.

Surely, he should not be required to run the risk of ignoring the parole conditions complained of with the consequence of being arrested as a parole violator and returned to a penal institution to serve his incompleted sentence and then be remitted to the doubtful remedy of habeas corpus or certiorari. In all fairness, he ought to know whether the conditions complained of apply to him or not, before making his choice of compliance or noncompliance.

If plaintiff's right to defend an action or a criminal prosecution brought against it, for failure to comply with the requirements that plaintiff obtain a license from the State Liquor Authority, was deemed an inadequate remedy, so as to permit it to maintain an action for a judgment declaring whether or not its business required a license, then surely, in this case, any legal remedy which plaintiff might have is so inadequate as to permit his action for a judgment declaring his rights with respect to the conditions of parole complained of.

We come now to a consideration of the merits of the controversy.

As already indicated plaintiff committed the crime of robbery on November 30, 1920, and was convicted thereof on March 17, 1924.

After the date of the commission by plaintiff of the crime of which he was convicted, to wit, November 30, 1920, sections 242 and 243 of the Prison Law, dealing with compensation and commutation and the conditions to be annexed by the Governor in reducing sentences of convicts not subject to the jurisdiction of the board of parole (i.e., *definite sentence convicts, as was the plaintiff*), were amended by chapter 567 of the Laws of 1921, so that those provisions differed on the date of conviction of plaintiff, to wit, March 17, 1924, from what they were on the date of the commission of the crime, to wit, November 30, 1920.

Between the date of such conviction, to wit, March 17, 1924, and the date of the Governor's warrant, to wit, July 25, 1940, and the date of plaintiff's actual release, to wit, August 7, 1940, sections 242 and 243 of the Prison Law (now sections 241 and 242 of the Correction Law) were amended by section 6 of chapter 736 of the Laws of 1926, by chapter 243 of the Laws

of 1929, by chapter 458 of the Laws of 1931, by chapters 297 and 300 of the Laws of 1932 and by sections 8 and 9 of chapter 902 of the Laws of 1935.

So far as here pertinent, the differences in the law resulting from the foregoing changes may be summarized as follows:

As to convicts *not* subject to the jurisdiction of the parole board, *i.e., definite sentence convicts, such as the plaintiff*, the statutes in force *at the time of plaintiff's commission of the crime,* provided that the Governor's warrant should direct the *discharge* of such convicts; and the *only* condition the Governor was required to annex to his warrant for discharge was that the discharged convict be not convicted of a felony committed thereafter until expiration of the full period of the original sentence.

As to the same class of convicts, the statutes in force *on the date of plaintiff's conviction and sentence and on the date of the Governor's warrant herein,* required the Governor to annex to his warrant for the discharge of such convicts, conditions that they do not violate the law; that they subject themselves to the jurisdiction of the parole board, etc.

Plaintiff contends that the changes made and the new conditions imposed by present sections 241 and 242 of the Correction Law, since the date of his commission of the crime of which he was convicted, do not apply to him; that he has a vested interest in the punishment fixed for his crime at the time of the commission thereof; that the changes in the law, in effect, produce an increase in the punishment for the crime over what it was when the crime was committed, and that, therefore, as to him the changes in the law do not apply; that if they are intended to apply to him, they are unconstitutional and void by reason of being *ex post facto* in their nature, and hence violative of section 10 of article I of the United States Constitution.

In plain language, plaintiff contends that upon his discharge, the only condition upon which he can be reapprehended to complete the reduced part of his sentence is the commission by him of another felony, in accordance with the statute as it existed when his crime was committed; whereas, under the law as amended, he can be apprehended at any time and imprisoned to complete the reduced part of his sentence, for any violation of the rules of the board of parole, whether such violation constitutes a crime or not.

It is elementary that any law passed increasing the punishment for a crime after the date of the commission thereof, does

not apply to those who committed the crime, before the change in the law, as being in violation of the *ex post facto* provision of the Constitution.

Here we are dealing not with a change in the punishment fixed for the crime but rather with a change in the law dealing with parole.

Plaintiff argues that a change in the parole law, adding new conditions, not in existence therein, when the crime was committed, indirectly increases the punishment for the crime and hence is unconstitutional and void, as *ex post facto,* and that plaintiff has a vested right in the statutory diminution of sentence and conditions of parole, as the same existed when the crime was committed.

In determining the issue presented, we are confronted not alone with the statutory provisions contained in sections 241 and 242 of the Correction Law, but also by the provisions of the State Constitution.

At the time of plaintiff's commission of the crime and continuously since, section 4 of article IV of the State Constitution (formerly § 5; renumbered § 4 by the Constitutional Convention of 1938), so far as pertinent, reads as follows:

" [REPRIEVES, COMMUTATIONS AND PARDONS; POWERS AND DUTIES OF GOVERNOR RELATING TO GRANTS OF.] § 4. The governor shall have the power to grant reprieves, commutations and pardons after conviction, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations, as he may think proper, subject to such regulations as may be provided by law relative to the manner of applying for pardons."

Under our Constitution the power to grant commutation is vested in the Governor and that constitutional grant of power also authorizes the Governor to impose such restrictions and conditions, as he may think proper.

It has been held that this power is unlimited and cannot be limited by statute or decision. (*People ex rel. Page* v. *Brophy,* 248 App. Div. 309, appeal dismissed 277 N. Y. 673.)

The Governor's power in the matter of granting pardons, reprieves and the like is unlimited. It stems from the Constitution and cannot be curtailed by the Legislature. In the exercise of this constitutional grant of power, the Governor can in his uncontrolled discretion grant or withhold pardons, reprieves, and parole and in granting them can impose any conditions thereon which he sees fit. If the Governor acted under his constitutional power, plaintiff concedes that he could

not complain and that his complaint does not state a cause of action.

Plaintiff, however, contends that in this case the Governor acted, not under his constitutional powers, but rather under the provisions of the Correction Law; that, having acted under the Correction Law, he could not impose the conditions complained of, since they differ from the conditions contained in the statute, on the date of the commission of the crime, and hence, as to plaintiff, the conditions are void, by reason of being conditions imposed in an *ex post facto* law.

In support of his contention, plaintiff points out that in chapter 902 of the Laws of 1935, amending the applicable sections of the Correction Law, there was contained the express provision that nothing contained therein should apply to a crime committed at any time before the effective date of said chapter and that such provision showed a clear legislative intent to avoid a retroactive effect.

However, it should be pointed out that no similar provision was contained in the 1921 amendment and the matters complained of were embodied therein, àll of the subsequent amendments having little or no materiality in the controversy now presented.

Moreover, regardless of the legislative intent, if the conditions complained of were imposed by the Governor under the statute, and not under the Constitution and were *ex post facto,* plaintiff would be entitled to the relief which he seeks.

The difficulty with plaintiff's position, however, is that even if we were to concede, *arguendo,* that his contention that the changed conditions are, in principle, *ex post facto,* is correct, all authorities are to the contrary.

Indeed, plaintiff in his brief concedes that the question here raised " was raised, in some form or other, in several cases which were decided contrary to our contention." But, he argues, that " None of these decisions, however, is by the Court of Appeals, and there is grave doubt whether they are sound. The issue is far from settled (See Report, Recommendations and Studies, Law Revision Commission, 1935; Legislative Document (1935) No. 60, pp. 506–507) ".

Neither the fact that the Court of Appeals has not passed upon the question, if that be the fact, nor doubt of the soundness of the decisions of the Special Terms of the Supreme Court and the Appellate Division thereof, even if such doubtfulness were conceded, afford any basis for this court to refuse or fail to follow the authority of those decisions.

Plaintiff argues that the certificate dealing with the parole of plaintiff, signed by the Governor, recites that it is made " in -pursuance of the provisions of the correction law " and hence shows a clear indication of the fact that the Governor acted under the Correction Law and not under the Constitution.

It does not necessarily follow that the language thus employed does so indicate.

It may well be that the language thus quoted referred to the reduction of sentence provided for in the Correction Law and that as to the conditions imposed, the Governor acted under his constitutional unlimited powers, and pursuant thereto, adopted as his own, the conditions contained in the Correction Law.

Concededly, he had that right and power.

But even if we were to accept the contention of the plaintiff, under the authorities, that would be of no avail, since those authorities are unequivocally to the effect, that the amendments in question, are not *ex post facto* and do apply to persons whose crimes were committed prior to the effective date of the amendments (except the 1935 amendments) and who are released on parole after the effective date of the amendments.

In *People ex rel. Mongno* v. *Lawes* (225 App. Div. 193) the precise question here presented was passed upon, with the possible exception that the precise form of the Governor's certificate was not before the court. And in that case, decided by the Appellate Division, Second Department, it was held that the 1921 amendment to the Correction Law applied to a person whose crime was committed prior to the effective date of the amendment; that such amendment did not constitute an increase in imprisonment and hence was not an *ex post facto* law.

Moreover, the court in that case held that the fact that the statute purports to direct the Governor to annex specified conditions to a commutation of sentence, is advisory only. (See, also, *Matter of Whalen*, 65 Hun 619, opinion in 19 N. Y. S. 915.)

In *People ex rel. Kleinger* v. *Wilson* (254 App. Div. 406) decided by the Appellate Division, Third Department, that court at page 408 said: " The difficulty is that under the Correction Law the right to release on parole and to a shortened term for good behavior and efficient work performed has always been an act of grace and favor and not a right. (*People ex rel. Cecere* v. *Jennings*, 250 N. Y. 239.) Any subsequent legislation, therefore, relative to the exercise of such favor or grace, affords no basis for relief on the ground that it is *ex post facto*. (*People ex rel. Ross* v. *Lawes*, 242 App. Div. 638; *People ex rel. Mongno*

v. *Lawes,* 225 id. 193; *People ex rel. Parker* v. *Brophy,* 244 id. 880.) '' (See, also, to same effect *People ex rel. Kleiman* v. *Martin,* 269 App. Div. 811; *People ex rel. Sabatino* v. *Lawes,* 217 App. Div. 779; *People ex rel. Ross* v. *Lawes,* 227 App. Div. 464; *People ex rel. Ross* v. *Lawes,* 242 App. Div. 638.)

In *People ex rel. Parker* v. *Brophy* (244 App. Div. 880) decided by the Appellate Division, Fourth Department, that court held that the law changing the conditions of parole, passed after the commission of a crime, was not *ex post facto.* Significantly, the Court of Appeals denied an application for leave to appeal from that determination. (268 N. Y. 727.)

In *People ex rel. Ross* v. *Wilson* (250 App. Div. 143) the Appellate Division, Third Department, summarily disposed of the contention that because, as here, the Governor's warrant stated that it was '' in pursuance of the provisions of the prison law '', he was acting under a statute and not exercising his constitutional power, the court stating at page 145: '' The recital that commutation was given ' in pursuance of the provisions of the Prison Law ' was only a courteous gesture toward the Legislature, as that body could neither add to nor detract from the explicit grant by the People of the State.''

This case reached the Court of Appeals and the determination of that court (275 N. Y. 169) by necessary implication, overruled the contention of the petitioner. Its determination necessarily meant that the imposition of the conditions of parole contained in the statute, as amended, after the commission of the crime, was not *ex post facto,* and the recital in the certificate that commutation was pursuant to statute, did not render the conditions imposed void or ineffectual.

In *People ex rel. Cleary* v. *Wilson* (254 App. Div. 714) the prisoner was convicted prior to the 1921 amendments to sections 242 and 243 of the then Prison Law. The Special Term granted the prisoner's writ of habeas corpus and discharged the prisoner. The situation in that case was precisely the same as the situation in this case, except that there there was an actual violation of parole. The Appellate Division, Third Department, unanimously reversed the Special Term and dismissed the writ on the authority of *People ex rel. Ross* v. *Wilson* (275 N. Y. 169, *supra*).

While it does not appear in the reports that the recitals in the Governor's certificate of commutation were the same in the *Cleary* case (*supra*) as in the instant case, that is of no moment, since the recital in the certificate of commutation in the case of *People ex rel. Ross* v. *Wilson* (275 N. Y. 169, *supra*) on the

authority of which the Appellate Division acted, did not contain the identical language of the certificate in this case, substituting only in this case the words " Correction Law " for the words " Prison Law ", used in the *People ex rel. Ross* v. *Wilson* case (*supra*).

With respect to the statement of the Law Revision Commission in 1935, it may be said that, while there may have been lack of unanimity, all prevailing opinions were contrary to plaintiff's contention.

Moreover, the subsequent decisions in *People ex rel. Parker* v. *Brophy* (244 App. Div. 880, leave to appeal denied 268 N. Y. 727, *supra*), *People ex rel. Ross* v. *Wilson* (250 App. Div. 143, revd. on other grounds 275 N. Y. 169, *supra*) and *People ex rel. Cleary* v. *Wilson* (254 App. Div. 714, *supra*) dispelled any doubt on the subject and overruled such contention as the plaintiff makes here.

In *People ex rel. Schlecter* v. *Jennings* (130 Misc. 748, affd. 223 App. Div. 814) the prisoner was sentenced prior to the 1921 amendments to sections 242 and 243 of the then Prison Law. He was granted commutation after the effective date of the amendments. The certificate of the Governor was in the same form as in the instant case, except for the use of the words " Prison Law " instead of " Correction Law " therein. The same contention was advanced in that case as in this and was not sustained, the court holding that the conditions imposed by the amendments were not *ex post facto* in their nature. (See, also, *People ex rel. Mark* v. *Lawes*, 131 Misc. 426.)

Plaintiff does not cite nor does independent research disclose a single decision in this State in support of his contention; on the other hand, all of the reported decisions in this State are to the contrary and an analysis of them demonstrates that if the Governor acted under the Constitution, plaintiff is not entitled to relief; that the 1921 amendment of the Prison Law was not *ex post facto,* and that, hence, if the Governor acted under the Correction Law, plaintiff is likewise not entitled to relief.

Since plaintiff's contention is based solely on the proposition that the Governor acted under the statute and not the Constitution, and since the decisions uniformly hold that the 1921 amendments to the Prison Law are not *ex post facto,* then, even if it be conceded that the Governor acted under the statute, plaintiff is not entitled to any relief.

The motion of the answering defendants for judgment on the pleadings is granted.

Submit orders accordingly.